**So Ordered.**

**Dated: November 10th, 2022**



Frederick P. Corbit
Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GRAY LAND & LIVESTOCK, LLC,<br><br>        Debtors. | Main Case No. 19-00467-FPC11 |
| CRITICAL POINT ADVISORS, LLC,<br>a Washington Limited Liability<br>Company,<br><br>        Plaintiff,<br><br>   v.<br><br>COLUMBIA STATE BANK, a<br>Washington state chartered bank,<br><br>Rick T. Gray, a resident of Washington,<br><br> and<br><br>GRAY LAND & FARMING, LLC, a<br>Washington Limited Liability<br>Company,<br>        Defendants. | Adversary Case No. 22-80021<br><br><br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER DETERMINING INTEREST AND AUTHORIZING PLAN AGENT'S AUCTION OF EQUIPMENT** |

       THIS MATTER came before the Court on the Plan Agent's Adversary

Complaint and Motion in Support for an Order Permitting the Sale of Equipment

ORDER PERMITTING SALE OF EQUIPMENT - 1

(the "Complaint"). (ECF No. 1) The Court reviewed the files and records herein, including the Complaint; Answer to the Complaint filed by Columbia State Bank ("Columbia") (ECF No. 13); and the Motion to Extend Time to File Documents, filed by Metiner G. Kimel[1] on behalf of Rick T Gray (ECF No. 14).[2] On October 25, 2022, the Court held a trial and heard testimony from Rick Gray and Brian Birdsall of Critical Point Advisors, LLC. At the trial's conclusion, the Court issued an oral ruling and ordered the Plan Agent to prepare an order to accompany the Court's written findings of fact and conclusions of law.

The Court incorporates its oral ruling, pursuant to Fed. R. Bankr. P. 7052, and enters the following additional findings of fact and conclusions of law to accompany the order approving the sale of the equipment:

## FINDINGS OF FACT[3]

## Procedural History

1.       Rick T. Gray was an owner and manager of: (i) Gray Land & Livestock, LLC (the "Debtor"); (ii) Gray Land & Farming, LLC; (iii) Gray Farms & Cattle Company, LLC; and (iv) Gray Holdings, LLC.

2.       On February 28, 2019, Debtor filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code (the "Petition") (ECF

---

[1] As of the date of this Order, Mr. Kimel is not the attorney of record for Rick Gray.

[2] Also relevant to these proceedings are records filed in the Main Bankruptcy Case 19-00467, including: Rick Gray's Objection to Plan Agent's Notice of Intent to Sell Equipment (ECF Nos. 517, 518, 519); Plan Agent's Motion to Sell Equipment (ECF No. 610); Declaration of Brian Birdsall (ECF No. 612); Declaration of Daniel J. Gibbons (ECF No. 613); and the Response filed by Rick Gray (ECF No. 649).

[3] Where a finding of fact is actually a conclusion of law, it shall be treated as such and vice-versa.

ORDER PERMITTING SALE OF EQUIPMENT - 2

No. 1). Mr. Gray signed the Petition as the authorized representative of Gray

Land & Livestock, LLC. (ECF No. 1, pp. 4-5, 11; amended at ECF No. 17, pp. 4-

5, 11)

3. On March 29, 2019, Debtor filed the required Schedules.[4] (ECF

Nos. 18-22) Debtor's Schedules were never amended.

4. On March 29, 2019, Mr. Gray signed under penalty of perjury

the Statement of Financial Affairs. (ECF No. 24, p.8) The Statement contains

"Part 11," entitled "Property the Debtor Holds or Controls that the Debtor Does

Not Own." (ECF No. 24 at pp. 5-6) There, Mr. Gray listed a single asset owned

by Tom and Lynda Gray:

| Debtor | Gray Land & Livestock, LLC | | Case number (if known) | |
|--------|---------|---------|---------|---------|
| Owner's name and address | | Location of the property | Describe the property | Value |
| Tom & Lynda Gray<br>PO Box 1525<br>Prosser, WA 99350-0833 | | Klickitat Farm Ground<br>Owned by Debtor | Approx. 20,000 bushels of<br>2018 wheat | $130,000.00 |

(ECF No. 24, pp. 5-6).

5. Notably absent from the list of property that Debtor holds or

controls are the vehicles and equipment Mr. Gray now claims are owned by

---

[4] Schedule A/B included Exhibits B1 and B2, that list property belonging to the Debtor. (ECF No. 18) Schedule D indicates Columbia State Bank has a $3,500,000 claim secured by Debtor's property. (ECF No. 19) In Schedule H, Mr. Gray indicated that he personally is a co-debtor on the Columbia State Bank debt. (ECF No. 22)

ORDER PERMITTING SALE OF EQUIPMENT - 3

Darrell Downing, Miland Walling, Rick Gray individually, Gray Holdings, LLC, Gray Farms & Cattle Company, LLC, Gray Land & Farms, LLC, Tom Gray, and the Orville Thomas Gray and Lynda Lee Gray Living Trust. (See ECF No. 24 at pp. 5-6) Debtor never amended the Statement of Financial Affairs.

      6.      On April 3, 2019, Debtor filed a Motion for Use of Cash Collateral (the "Cash Collateral Motion") and Declaration of Rick Gray in Support of the Cash Collateral Motion. (ECF Nos. 30; 31)

      7.      During an emergency hearing on the Cash Collateral Motion on April 10, 2019, Mr. Gray provided the following testimony:

> ROGER BAILEY:[5] Now, I'm going to refer you to the Bankruptcy Schedules again, that were filed, and there is Exhibit B1 and Exhibit B2, I'm going to have you take a look at those right now.
> RICK GRAY: Okay.
> ROGER BAILEY: Do you recognize those lists?
> RICK GRAY: I do.
> ROGER BAILEY: And are those lists of equipment or titled vehicles that are owned by Gray Land & Livestock?
> RICK GRAY: Yes

(ECF No. 47, 1:19:55 through 1:21:20)

> ROGER BAILEY: So, as of the date that the bankruptcy petition was filed, which was February 28th, did Gray Farms own any significant assets?
> RICK GRAY: No.

---

[5] As of the date of the emergency hearing, Roger Bailey was the attorney of record representing both the Debtor, Gray Land & Livestock, as well as Mr. Gray individually.

ORDER PERMITTING SALE OF EQUIPMENT - 4

ROGER BAILEY: All of the assets that you disclosed on the bankruptcy schedules, are those all owned by Gray Land & Livestock?

RICK GRAY: All equipment and all the property is in the name of Gray Land, correct.

(ECF No. 47, 1:26:50 through 1:27:55)

JASON AYRES: Okay, that didn't really answer the question. So Gray Farms planted last year, conducted farming operations last year, obtained 2019 insurance, was planning on farming this year, but then you filed this bankruptcy, and now you're transferring farming operations into Gray Land. Why is that necessary?

RICK GRAY: Because Gray Land owns all the assets, Gray Land owns the equipment, Gray Land is responsible for the equipment, Gray Land has the majority of 6,700 acres. So Gray Land has that obligation of having [sic] the crops.

(ECF No. 47, 2:34:40 – 2:35:20)

8.     The Cash Collateral Motion was granted in part and scheduled for a final hearing. (ECF No. 53)

9.     On April 24, 2019, the Court held the final hearing on the Cash Collateral Motion. (ECF Nos. 58, 60) Following the hearing, the Court agreed to sign an order granting the use of cash collateral provided that Mr. Gray, on behalf of himself and his entities, signed the Order confirming the following representations:

*Gray Farms & Cattle Company, LLC, Gray Holdings, LLC and Rick T. Gray individually stipulate and agree, as evidenced by their signatures on this order, that they claim no ownership interest in the assets described in the Debtor's bankruptcy schedules, including but*

ORDER PERMITTING SALE OF EQUIPMENT - 5

*not limited to*: (a) the 2017 crop proceeds deposited into the Debtor-in-Possession account; (b) the 2018 crop proceeds in the possession of the Debtor; (c) the 2019 crops which have been and will be planted on the Debtor's land and the land subject to the Tom Gray Lease; and (d) all 2019 livestock.

(ECF No. 63, ¶ 15) (emphasis added) Mr. Gray signed the order. (ECF No. 63)

   10. On April 2, 2020, Debtor filed the First Amended Disclosure Statement in Support of Debtor's Proposed Plan of Reorganization (the "Disclosure Statement"). (ECF No. 205) The Disclosure Statement provided that all the real property and equipment that had been owned by Mr. Gray, Gray Farms & Cattle Company, LLC, and Gray Holdings, LLC had been transferred into the Debtor:

> Rick T. Gray has been farming in Klickitat County and Yakima County for over twenty-five (25) years. During the course of the last twenty-five (25) years Mr. Gray has formed a number of companies which have been involved in certain aspects of the farming operations.

(ECF No. 205, p. 6)

> One thing that did happen was that all of the real property and equipment that was owned by Mr. Gray and his entities was transferred into the Debtor.

(ECF No. 205, p. 6)

   11. During Mr. Gray's May 26, 2020, deposition he testified, under oath, that all the farm property was owned by Gray Land & Livestock:

ORDER PERMITTING SALE OF EQUIPMENT - 6

MATT ANDERTON, CHAPTER 11 TRUSTEE: So is it your intent
today that all of your farm property, both the real estate and
equipment, is owned by Gray Land & Livestock?
RICK GRAY: Correct.
MATT ANDERTON, CHAPTER 11 TRUSTEE: Does Rick Gray
own any property, assets, equipment that would not be encompassed
in Gray Land & Livestock?
RICK GRAY: Correct.
THE REPORTER: Do we –
MATT ANDERTON, CHAPTER 11 TRUSTEE: Do –
UNIDENTIFIED MALE SPEAKER: No -- Rick answered no.

(ECF No. 613-1, p. 16)

MATT ANDERTON, CHAPTER 11 TRUSTEE: And your intent
was that all operations were in Gray Farms and Cattle and all property
ownership is in Gray Land & Livestock.
RICK GRAY: Correct.

(ECF No. 613-1, p. 17)

12.     On June 19, 2020, the Court entered an order Confirming

Columbia State Bank's Second Amended Chapter 11 Plan (the "Plan") (ECF No.

288).[6] The Plan provides that, upon the effective date, all assets of the Estate

shall transfer to the Debtor. (ECF No. 286, p. 13) Upon such transfer, all assets

shall be transferred from the Debtor and shall vest in the Grantor Trust under the

terms of both the Plan (ECF No. 286, p. 13) and the Grantor Trust Agreement.

(ECF No. 286, p. 37)

---

[6] The Court's Order Confirming Columbia State Bank's Second Amended Plan of Liquidation contains
additions and amendments to the proposed Plan. (ECF No. 288)

ORDER PERMITTING SALE OF EQUIPMENT - 7

13.     The Plan requires the Plan Agent to liquidate trust assets. (ECF No. 286, pp. 13, 37) The Grantor Trust authorizes the Plan Agent to sell the trust assets. (ECF No. 286, pp. 39-40) The Plan incorporates a negative consent procedure, which provides absent objection, after fourteen days' notice to the service list, the trust assets may be sold. (ECF No. 286, pp. 13-14)

14.     On January 25, 2022, Critical Point Advisors issued a notice of sale indicating the Plan Agent's intent to sell trust assets, including equipment and vehicles in a public auction ("Notice of Auction").[7] (See ECF No. 517-1)

15.     On February 8, 2022, Mr. Gray, asserting he was the "*owner of the Debtor-in-Possession,*" filed a Declaration in Opposition to the Plan Agent's Notice of Auction ("Declaration in Opposition") on the grounds that certain items included in the auction were not trust assets.[8] (ECF No. 517, p.1, emphasis added)

16.     Specifically, Mr. Gray alleged:  (i) Auction Lots 51-69 were the property of deceased father; (ii) Auction Lots 51, 55, and 58 were the property of

---

[7] The Plan Agent miscalculated the fourteen-day notice period and the auction was scheduled and held on February 8, 2022. (ECF No. 610, Ex. B) The Plan Agent asserts, and the auctioneer testified, that bids were received, but no payments were made, and no sales were consummated. (ECF No. 610)

[8] Mr. Gray's Objection to Auction correctly asserts that the Plan Agent's Notice of Auction failed to provide the fourteen day notice required by the Plan, and that it was improper to hold the auction before February 9, 2022. However, because no sales were consummated and no money or property was exchanged, Mr. Gray did not suffer irreversible substantial harm and thus due process has not been violated.

ORDER PERMITTING SALE OF EQUIPMENT - 8

Miland Walling; (iii) Auction Lot 40 was the property of Mr. Downing; and (iv) Auction Lots 1-13, 41-48, 51-54, 57,59, 68, and 69 were the property of Rick Gray personally or other Gray non-debtor entities. (ECF No. 517, p. 6)

17. Mr. Gray's objection provided no substantive evidence to support the allegations.

18. Mr. Gray's Declaration in Opposition was the only objection to the Notice of Auction. Despite Mr. Gray's allegations, no objections were filed by Miland Walling, Mr. Downing, Lynda Gray,[9] or the trustee of the Orville Thomas Gray and Lynda Lee Gray Living Trust.

19. During the August 30, 2022, hearing on the Motion to Sell Property Equipment, the Court determined that, per the testimony of the Plan Agent, Mr. Downing had established ownership of the property contained in Auction Lot 40. (ECF Nos. 642, 643)

20. At the conclusion of the hearing, the Court authorized the sale of the titled vehicles listed in the Notice of Auction and ordered the Plan Agent to prepare a revised order and send to counsel for approval as to form. Related to Auction Lots 51-69, the Court ordered the Plan Agent to file documentation specifying the property to be sold at auction and the basis for the Grantor Trust's

---

[9] Lynda Gray is Defendant Rick Gray's mother, and the widow of Orville Thomas Gray, Rick Gray's father.

ORDER PERMITTING SALE OF EQUIPMENT - 9

interest in the property. The Court granted Mr. Gray until September 2, 2022, to either consent to determining the disputed property ownership as a contested matter, or to object and require an adversary proceeding to be filed. (ECF No. 642, 643)

21.     On September 7, 2022, Mr. Gray objected to the language in the Plan Agent's revised order and requested that the property determination continue as an adversary proceeding.[10] (ECF No. 649)

22.     Based on Mr. Gray's objection and the testimony of the parties during the September 12, 2022, hearing, the Court determined an adversary proceeding was necessary to determine ownership interest in all the titled and untitled disputed property to be auctioned. (ECF Nos. 653, 655)

23.     Mr. Gray and the attorney he was considering hiring, Metiner Kimel, agreed to accept service by email and to file a response within 20 days. The parties agreed to a trial date of October 25, 2022 (the "Trial").[11]

24.     The Plan Agent filed the Complaint on September 16, 2022, initiating Adversary Case No. 22-80021: *Critical Point Advisors, LLC vs.*

---

[10] Despite the fact Mr. Gray's response was filed five days after the Court's deadline, the Court considered the untimely response.

[11] Also present at the hearing were Brian Birdsall, the Plan Agent, Jerome Aiken as attorney for the Plan Agent, and Jason Ayres as attorney for Columbia State Bank.

ORDER PERMITTING SALE OF EQUIPMENT - 10

*Columbia State Bank, Rick T. Gray, and Gray Land & Farming, LLC.* (Adv. ECF No. 1)

25.     On September 19, 2022, a Summons was issued (Adv. ECF No. 4), and a Certificate of Service was filed. (Adv. ECF No. 5) Notice of the adversary proceeding was proper.

26.     On September 30, 2022, the parties filed a Joint Status Report for the Trial. (Adv. ECF No. 6) The court held a scheduling conference on October 4, 2022 that was attended by Jerome Aiken, attorney for Plaintiff; Jason Ayres, attorney for Defendant Columbia State Bank; Metiner Kimel, potential attorney for Defendant Rick Gray; and Defendant Rick Gray as an individual and representative of Gray Land & Farming, LLC.[12] (Adv. ECF Nos. 7, 8)

27.     On October 24, 2022, on the evening before the Trial and twenty-five days after service, Mr. Gray filed a Motion for Continuance of the Trial. (Adv. ECF No. 14) Mr. Gray argued that because Mr. Kimel had declined to represent him or the Gray entities, Mr. Gray as an individual, Gray Land &

---

[12] Each docket entry evidences Mr. Gray's notice of and acquiescence to the deadlines in this adversary proceeding.

ORDER PERMITTING SALE OF EQUIPMENT - 11

Farming, and Gray Land & Livestock, LLC,[13] were all without counsel and needed more time to secure counsel.

28.     On the morning of Trial, Mr. Gray argued his motion for continuance.[14] The Court found Mr. Gray's motion provided no reasonable basis for the Court to grant the continuance motion. Mr. Gray had notice of the trial date for many weeks and his failure to secure counsel was due to his own lack of diligence. Moreover, the continuance would have served no useful purpose, and a delay on the morning of trial would have greatly inconvenienced the court, the opposing parties, and the witnesses, several of whom had travelled to Spokane. Finally, Mr. Gray was not prejudiced by the denial of his motion; his motion merely repeated his unsubstantiated allegations about asset ownership, including several claims he lacked standing to assert because the asserted claims belonged to other individuals or entities. The Court denied the motion for continuance because it lacked merit and proceeded with Trial.

---

[13] Gray Land & Livestock, LLC, is the Debtor in the main bankruptcy case, 19-00467-FPC11, but is not a party to the adversary lawsuit.

[14] The morning of Trial, Mr. Gray also orally moved to remove Brian Birdsall as Plan Agent. The Court ruled the oral motion was untimely but informed Mr. Gray that he could file a written motion for the Court's consideration. (Adv. ECF No. 16, beginning at 19:16)

ORDER PERMITTING SALE OF EQUIPMENT - 12

29.     Also prior to Trial, counsel for Critical Point Advisors orally moved to grant a default against Gray Land and Farming, LLC.[15] The Court took the motion under advisement.

30.     During trial, the Court heard testimony from the Plan Agent and finds the Plan Agent's testimony credible.

31.     Mr. Gray testified at trial, and his testimony was not credible. Mr. Gray's current assertion about the ownership of estate property is directly inconsistent with his previous assertions about the ownership of that same property. Mr. Gray has repeatedly disclaimed ownership interest in the disputed property, each time to his advantage. See, e.g., Debtor's Statement of Financial Affairs (ECF No. 24); Rick Gray's testimony during the emergency cash collateral hearing (ECF No. 47); Rick Gray's signature on the cash collateral order indicating his consent and agreement to the statement: "Gray Farms and Cattle Company, LLC, Gray Holdings, LLC, and Rick Gray claimed no ownership in the assets described in the Debtor's bankruptcy schedules" (ECF No. 63, p. 10); Debtor's Disclosure Statement (ECF No. 205); and Rick Gray's deposition testimony (ECF No. 613-1, pp. 16-17). Now, Mr. Gray adopts a contradictory position, that if adopted by the Court, would allow Mr. Gray to

---

[15] On the morning of Trial, Critical Point Advisors also orally moved to strike Mr. Gray's motion for a continuance as untimely. Because the Court denied Mr. Gray's motion for continuance, Critical Point Advisor's motion to strike is moot.

ORDER PERMITTING SALE OF EQUIPMENT - 13

derive an unfair advantage and impose an unfair detriment on Columbia State Bank.

32.     Additionally, Mr. Gray's trial testimony was unclear and failed to provide a coherent basis for his objection to the sale of the property.

33.     During Trial, the Plan Agent offered and the Court admitted Exhibit 112, a Proposed Order as to the Sale of Items of Equipment and Distribution of Sale Proceeds. (Adv. ECF No. 11-12) Attached to the Proposed Order was Exhibit A, an itemized list of personal property and equipment ("Exhibit A"). (Adv. ECF No. 11-12, pp. 6-9)

34.      The equipment listed in Exhibit A was used by the Debtor for farming operations and was properly transferred to the Grantor Trust under the terms of the Plan.

35.     The titles attached to Proof of Claim 14, filed by Columbia State Bank on May 29, 2019, conclusively establish that for the titled vehicles listed in Exhibit A, Columbia State Bank is the legal owner, and the Debtor is the registered owner. (Claim 14-1, p. 19-20)

36.     The Court finds no good faith grounds for Mr. Gray's assertions that certain items listed in Exhibit A are owned by people or entities other than Debtor. Mr. Gray's objections to the sale are overruled.


ORDER PERMITTING SALE OF EQUIPMENT - 14

37.    Plaintiff has demonstrated by a preponderance of the evidence that the property in Exhibit A is property of the Grantor Trust and therefore property the Plan Agent may sell.

## CONCLUSIONS OF LAW

1.    A corporation may appear in the federal courts only through licensed counsel. *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202, 113 S. Ct. 716, 721, 121 L.Ed.2d 656, 666 (1993); see also *Dutch Vill. Mall, LLC v. Pelletti*, 162 Wn. App. 531, 535-36, 256 P.3d 1251, 1252 (2011) (Washington, like all federal courts, follows the common law rule that corporations appearing in court proceedings must be represented by an attorney). Because Mr. Gray is not a licensed attorney, he may not represent the interests of any corporate entity.

2.    A person has standing to object in a bankruptcy proceeding when the person will be directly and adversely affected pecuniarily by the court's decision. See *Fondiller v. Robertson (In Matter of Fondiller)*, 707 F.2d 441, 442 (9th Cir.1983) (debtor appealing a bankruptcy court order carries the burden to demonstrate he was directly and adversely affected pecuniarily by an order). A person is "directly and adversely affected pecuniarily" when a one's property is diminished, burdens are increased, or one's rights are detrimentally

ORDER PERMITTING SALE OF EQUIPMENT - 15

affected. See *In re Point Center Financial, Inc*., 890 F.3d 1188, 1191 (9th Cir. 2018) (citations omitted) (quoting *Fondiller* 707 F.2d at 443).

3.      Mr. Gray lacks standing to object to the sale on the basis that property or equipment in the proposed sale belongs to other individuals, such as Miland Walling, Mr. Downing, Mr. Gray's deceased father or his mother Lynda Gray.

4.      The decision to grant or deny a request for a continuance "lies within the broad discretion of the trial court" and "will not be disturbed on appeal absent clear abuse of that discretion." *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir.1985), *amended on other grounds*, 764 F.2d 675 (9th Cir.1985).

5.      The Ninth Circuit has adopted four factors to consider when determining a motion for a continuance: (1) the movant's diligence in its efforts to ready its defense prior to the date beyond which a continuance is sought; (2) whether the continuance would have served a useful purpose if granted; (3) the extent to which granting the continuance would have inconvenienced the court, opposing parties, and witnesses; and (4) the amount of prejudice suffered by the movant due to the denial of the continuance. *United States v. Flynt*, 756 F.2d at 1359; *Armant v. Marquez,* 772 F.2d 552, 556 (9th Cir.1985).

ORDER PERMITTING SALE OF EQUIPMENT - 16

6.      A creditor may challenge sale transfers based on an estate's lack of the power to sell. *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 778 (9th Cir.1999); *In re Popp,* 323 B.R. 260, 265 (B.A.P. 9th Cir. 2005).

7.      Absent consent from all interested parties, Federal Rule of Bankruptcy Procedure 7001(2) requires an adversary proceeding to determine the validity, priority, or extent of an interest in property. *See In re Popp*, 323 B.R. at n.13.

8.      Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor, are eligible for treatment as judicial admissions. *In re Rolland*, 317 B.R. 402, 422 (Bankr. C.D. Cal. 2004). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Inc. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1998) (*quoting In re Fordson Eng'g Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)). Judicial admissions are conclusively binding on the party who made them. *Am. Title Ins.*, 861 F.2d at 226; *Fordson*, 25 B.R. at 509. Even when schedules are amended, the old schedules are subject to consideration by the court as evidentiary admissions. See *In re Kaskel*, 269 B.R. 709, 715

ORDER PERMITTING SALE OF EQUIPMENT - 17

(Bankr. D. Idaho 2001); *In re Bohrer*, 266 B.R. 200, 201 (Bankr.N.D.Cal. 2001).

9.      "Adopting a cavalier attitude toward the accuracy of the schedules and expecting the court and creditors to ferret out the truth is not acceptable conduct by debtors or their counsel." *In re Duplante*, 215 B.R. 444, 447 n. 8 (9th Cir. BAP 1997). A debtor has an independent duty to verify the accuracy of their schedules. *See Rolland*, 317 B.R. at 422 ("Debtors bear the ultimate responsibility for correcting inaccurate or incomplete information in their schedules and statements").

10.      Parties are bound by their factual stipulations. *U.S. Aluminum Corp./Texas v. Alumax, Inc.,* 831 F.2d 878, 880 (9th Cir. 1987)(courts are bound by the factual stipulations of the parties); *In re James E. O'Connell Co., Inc.*, 893 F.2d 1072, 1074 (9th Cir. 1990) (trustee's stipulation was binding on trustee); *Gilbert v. Ben-Asher*, 900 F.2d 1407, 1410 (9th Cir. 1990) (a stipulation with prejudice determines the parties' rights).

11.      "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Courts invoke judicial

ORDER PERMITTING SALE OF EQUIPMENT - 18

estoppel to maintain "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings" and to prevent "a litigant [from] playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotations omitted). Under the doctrine of judicial estoppel, a party may not prevail in one phase of a case on an argument and then rely on a contradictory argument to prevail in another phase of the case. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L.Ed.2d 968 (2001); see 18 MOORE'S FEDERAL PRACTICE § 134.30, p. 134–62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4477, p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

12. Courts have uniformly recognized the purpose of judicial estoppel is "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the

ORDER PERMITTING SALE OF EQUIPMENT - 19

moment." *New Hampshire*, 532 U.S. at 749 (citations and internal quotes omitted).

13.     Because the rule is intended to prevent "the improper use of judicial machinery," judicial estoppel is "an equitable doctrine invoked by a court at its discretion." *New Hampshire*, 532 U.S. at 749, quoting *Russell,* 893 F.2d at 1037 (internal quotation marks and citation omitted).

14.     In determining whether to apply the doctrine of judicial estoppel, courts consider several factors, including: (i) whether a party's later position is clearly inconsistent with its earlier position; (ii) whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (iii) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Maine*, 532 U.S. at 750-51.

15.     Judicial estoppel is applied in matters involving a debtor's bankruptcy schedule. *See e.g., Drazkula v. McHugh*, 746 F.3d 399, 401 (9th Cir. 2014) (employment discrimination lawsuit barred lawsuit under judicial estoppel because debtor failed to include the lawsuit on bankruptcy schedules).

ORDER PERMITTING SALE OF EQUIPMENT - 20

16.     Judicial estoppel precludes Mr. Gray from asserting an ownership interest in the equipment and personal property listed in Exhibit A.

17.     Critical Point Advisors, LLC, is entitled to a default judgment against Gray Land & Farming, LLC. The Certificate of Service in this case indicates the Summons and Complaint was served on Rick T. Gray on behalf of Gray Land & Farming, LLC. (Adv. ECF No. 5, p. 2) Gray Land & Farming LLC, did not appear and respond to the Complaint, and thus has defaulted. Fed. R. Bankr. P. 7055; Fed. R. Civ. P. 55.

///END OF ORDER///

ORDER PERMITTING SALE OF EQUIPMENT - 21